## DENMAN *vs.* PRINCE and MISNER.

The parties were adjoining proprietors of land embracing a water-power; the plaintiff owning a grist-mill, and the defendants owning, together, a saw-mill; both mills being supplied with water drawn from the same source, by means of dams, gates, &c. and a channel leading therefrom to the mill-pond. In 1851, H., the then owner of all the lands and mills in question, sold to the plaintiff that portion embracing the grist-mill—at the same time executing an agreement under seal, granting to the plaintiff the first use of the water power, to run the grist-mill, and covenanting that he would at all times be at an equal expense in keeping up and repairing the dams for their mutual benefit, so as to run both the grist-mill and the saw-mill. H. subsequently, by separate deeds, conveyed to the defendants the saw-mill property, subject to the rights and privileges previously conveyed to the plaintiff. The complaint, after alleging that the defendants, either as copartners, tenants in common or joint tenants, were owners, occupants, possessors &c. of a saw-mill on the opposite side of the mill-dam, averred that the plaintiff had repaired and rebuilt the dam; and for the work and labor done, the plaintiff claimed to recover, and demanded that the defendants be adjudged to pay their share or proportion of the cost and expenses incurred; and asked judgment for a specific sum.

*Held*, 1. That the defendants took their deeds subject to the plaintiff's rights; and that the covenant of H. to share in the repairs, was a covenant running with the land, and by the transfer of the grantor's title to the defendants, became binding upon them, notwithstanding the omission of the word " assigns," therein.

2. That the defendants, being tenants of the mill privilege with the plaintiff, and enjoying the benefit of it, were upon well established principles, independent of the covenant of their grantor, bound to share the burden, and to contribute their share or proportion towards the reparation of the dams.

3. That the plaintiff had made out a case in his complaint, which, under the liberal system of practice prevailing since the Code of Procedure, could be upheld, and that a nonsuit was improperly granted.

4. That if the complaint was defective, it was a proper case for allowing an amendment, on terms.

THIS was an appeal by the plaintiff from a judgment of nonsuit, entered by direction of the justice, at the Sullivan circuit held in April, 1861. The action was brought to recover of the defendants their proportion of the expense incurred by the plaintiff in maintaining, building and repairing mill-dams, gates, bulkheads, &c. The parties are adjoining

proprietors; the plaintiff owning a grist-mill; the defendants owning together a saw-mill, both being supplied with water drawn from the Neversink stream, at a point about a mile above, by means of certain dams, gates, &c. and a channel leading therefrom to the mill-pond. Originally William M. Hall (the person from whom all parties derive title) owned all the lands and mills in question until February 28, 1851, when, in consideration of $2300, he sold to the plaintiff that portion embracing the grist-mill. Hall, at the same time, executed an agreement in writing and under seal, to the plaintiff, granting to the plaintiff, among other things, " the first use of the water power to run said grist-mill," and therein covenanted that he " would at all times be at an equal expense in keeping up and repairing the dams for their mutual benefit, so as to run both the plaintiff's grist-mill and the defendant's saw-mill." By deed dated February 1, 1852, Hall conveyed to Prince, with other lands, an undivided one half of that part embracing the saw-mill, subject, however, to the rights and privileges previously conveyed to Denman. By deed of the same date of the deed to Prince, Hall conveyed to Misner all his interest in the saw-mill, subject in like manner to the rights of Denman. The plaintiff, to establish his cause of action proved, among other things, as follows : Title, use and possession in him of the grist-mill property ; a grant of the first use of the water, by Hall to the plaintiff ; a covenant by Hall to share the burden of keeping up the dams ; title, use and possession of the saw-mill in the defendants ; that both mills are supplied with water from a common source ; repairing of dams, &c. by the plaintiff ; cost of repairing, &c. $360 ; notice to the defendants to assist in building and repairing the dams ; refusal of the defendants to do so ; a demand of each of them for their proportion of the expense of repairs ; joint occupancy and use of the saw-mill by the defendants in the manufacture of lumber, ever since they took possession in 1852 ; that for the first two or three years after they owned and operated the saw-mill,

they assisted in repairing and keeping up the dams; an admission of indebtedness from each defendant of $18.75 for repairing dams; that the quantity of water is made available and regulated by dams, gates, &c. The plaintiff rested, and the defendants moved for a nonsuit, upon the ground that the plaintiff, under the evidence given, could not recover upon the complaint as framed in this action. The court granted the motion; to which ruling and decision the plaintiff's counsel excepted. The plaintiff then moved to amend the complaint by conforming it to the facts proved. This motion the court denied, and the counsel for the plaintiff excepted. The plaintiff then made several offers of evidence, not material to be stated. The nonsuit was entered, and judgment was docketed for the costs. The plaintiff appealed from the judgment to the general term.

*A. J. Parker*, for the plaintiff and appellant.

*J. H. Reynolds*, for the defendants and respondents.

*By the Court*, MILLER, J. The motion for a nonsuit on the trial of this case was granted upon the ground that the plaintiff, under the evidence, could not recover upon the complaint as framed, in this action. It does not distinctly appear in what respect the complaint was considered as insufficient to sustain the action, as the grounds upon which the motion for a nonsuit was based are not stated. It is perhaps fair to assume that it must have been either upon the ground that the judge considered that the action could not be maintained against the defendants jointly; or, as the parties were tenants in common, that the complaint should have been so framed as to charge them as in an action for an accounting. If upon either of these grounds or both of them, the nonsuit was granted, it becomes important to inquire, in the first place, what the allegations were in the complaint, in this particular.

A reference to the complaint will disclose that after stating

the plaintiff's and the defendants' title, and alleging that the defendants either as copartners, tenants in common or joint tenants, were owners, occupants, possessors and operators of a saw-mill on the opposite side of the mill-dam, it avers that the plaintiff repaired and rebuilt the dam, and for the performance of the work and labor done and performed he claims to recover, and demands that the defendants be adjudged to pay their share or proportion of the cost and expense incurred, and asks judgment for a specific sum. It does not claim specifically a judgment, but that the defendants pay their share or proportion.

In this connection it is well to notice that in the conveyance of the water-power to the plaintiff his grantor bound himself and his legal representatives to contribute an equal share in keeping up and repairing the dams, &c., and in the several conveyances to the defendants the rights of the plaintiff in the conveyance to him are expressly reserved.

The defendants took their deeds subject to the plaintiff's rights, and I think the covenant of the plaintiff's grantor, to share in the repairs, was a covenant running with the land, and by the transfer of the grantor's title to the defendants became binding upon them. (4 *Kent's Com.* 473. *Demarest* v. *Willard*, 8 *Cowen*, 206. *Norman* v. *Wells*, 17 *Wend.* 148. *Trustees of Watertown* v. *Cowen*, 4 *Paige*, 510. 1 *Smith's Leading Cas. in Eq.*, H. & W.'s ed. of 1855, 116, 118, 122. *Allen* v. *Culver*. 3 *Denio*, 285.) Such covenants depend upon the privity of estate, and not on privity of contract, and they run with the land when they are for the benefit of the estate, and not for a mere personal benefit. (*Norman* v. *Wells*, 17 *Wend.* 136. *Vyvyan* v. *Arthur*, 2 *Dowl. & Ryl.* 670. 1 *Barn. & Cress.* 410. *Vernon* v. *Smith*, 5 *Barn. & Ald.* 1. *Van Rensselaer* v. *Bonesteel*, 24 *Barb.* 365.)

There was clearly a privity of estate between the parties, and the covenant to repair was a portion of the original consideration, and was executed upon the sale as a part of the same transaction. The true distinction appears to be that if

Denman *v.* Prince.

the covenant is made on the sale of the property, in a case like the present, it runs with the land. (*Hand* v. ·*Curtiss*, 19 *Pick.* 459, 464.) The omission of the word assigns, in the conveyance, does not appear to be material. By taking possession the assignee subjects himself to liability, and the covenant binds him although he be not bound by the express words. (*Norman* v. *Wells*, 17 *Wend.* 149, 150, 153. 1 *Smith's Lead. Cas.* 116. *Beddoe's Ex'r* v. *Wadsworth*, 21 *Wend.* 120. *Fowler* v. *Poling*, 2 *Barb.* 300. *Bally* v. *Wells*, 3 *Wils.* 25.) The covenant in question running with the land bound the defendants as the grantees.

I am also inclined to the opinion that the defendants, being tenants of the mill privilege with the plaintiff, and enjoying the benefit of it, under well established principles were bound to share the burden and to contribute their share or proportion towards the reparation of the dams. (*Willard's Eq. Jur.* 105, 106, 116. *Stevens* v. *Cooper*, 1 *John. Ch.* 430, 431. *Campbell* v. *Mesier*, 4 *id.* 335, 338, 339.) Upon establishing a proper case, one tenant in common or joint tenant can compel the others to unite in the expense of necessary reparation of a house or mill. (4 *Kent*, 370.)

With these general principles laid down, it remains to be considered whether the plaintiff made out a case in his complaint, which, under the liberal system of practice that has been sanctioned since the code of procedure was adopted, can be upheld. By section 274 of the code, judgments may be entered against one or more of several plaintiffs, and for or against one or more of several defendants, and the court may determine the ultimate rights of parties as between themselves. Under this provision it has been held that the code has modified the general common law rule, that in an action upon an alleged joint contract the plaintiff must recover against all the defendants or be defeated in his action. (*Brumskill* v. *James*, 1 *Kern.* 294.) In *Jacot* v. *Boyle*, (18 *How. Pr. Rep.* 106,) it was decided, that an action brought by a judgment creditor to set aside as fraudulent and void

several and separate conveyances of real estate made to differ-ent parties by the judgment debtor, so that the plaintiff can satisfy his judgment out of such property, contains but *one cause of action,* and the several grantees are proper parties defendants. (*See also Eldridge* v. *Bell,* 12 *How.* 547; *The People* v. *Cram,* 8 *id.* 151.) The next section, 275, provides that the court may grant the plaintiff any relief consistent with the case made by the complaint, and embraced in the issue. Would it not have been entirely consistent with the complaint in this case, and with the facts presented, to grant relief against each of the defendants separately, if it appeared that their interests were divided? Was not such relief fairly embraced within the scope of the complaint?

In the case of *Marquat* v. *Marquat and wife,* (12 *N. Y. Rep.* 336,) where the action was against husband and wife, and the plaintiff demanded judgment that the defendants ex-ecute a mortgage upon the real estate of the wife to secure him money alleged to have been advanced on their promise to give security, and for such other and further relief as the court should deem proper, and the plaintiff failed to prove a case entitling him to the relief specifically demanded, but proved that the husband was liable to him for the moneys advanced, it was held that the court might give judgment against the husband and dismiss the complaint as to the wife.

In *Cole* v. *Reynolds,* (18 *N. Y. Rep.* 74,) which was an action between partners of two firms, it was decided that in equity it was enough that the proper parties were before the court, and it was not necessary in such a case that the com-plaint should propose an accounting as between the firms or the various partners; but such accounting may be directed, if facts are shown that would render it inequitable to permit a recovery by one firm against the other, without adjusting the accounts of the individuals composing it.

In *Emery* v. *Pease,* (20 *N. Y. Rep.* 62,) where the com-plaint contained no averment that the parties had stated an account, but set forth a state of facts showing that the plain-

tiff was entitled to an account, and tending to show an account stated, and demanded judgment for a sum certain as an ascertained balance, it was held that the complaint should not be dismissed; but that the action proceed as if the plaintiff had asked an accounting and judgment for the amount which should thereupon be found due. (*See also The N. Y. Ice Co.* v. *The N. W. Insurance Co. of Oswego,* 23 *N. Y. Rep.* 357, 359, 360; *Bidwell* v. *The Astor Mutual Ins. Co.,* 16 *id.* 263.)

The principle established is that relief can be granted consistent with the facts stated, although not specifically demanded; without regard to the old distinction between law and equity which has been abolished by the code. (*See* § 69 *of Code.*) Under the provisions of the code which have been cited, and the liberal rules established in the adjudicated cases, to which I have referred, I see no great reason why the whole case could not be heard and disposed of. The parties were all before the court, and the proof was sufficient at least to show that the plaintiff had a right of action against the defendants, separately or together. If they were liable only separately, or if their proportions of the expenses of the repairs were different, the specific question of fact might be tried by a jury, and an accounting ordered, to adjust the amount to be paid by each of the defendants. Such relief was consistent with the complaint, and embraced within the issue, and I think that the nonsuit was improperly granted by the judge.

But conceding that the pleadings were defective, it seems to me that there was no such variance as could not be supplied under the liberal provisions of the code. (§§ 169–171.) There was no pretense that the opposite party was misled; and I think it would have been a proper exercise of discretion to allow an amendment upon such terms as the case demanded. As, however, a new trial must be granted for the reasons already given, I forego any further discussion of this point,

as well as of the other questions raised by the plaintiff's counsel upon the argument.

The nonsuit must be set aside, the judgment reversed and a new trial granted, with costs to abide the event.

[ALBANY GENERAL TERM, December 1, 1862. *Hogeboom, Peckham* and *Miller*, Justices.]